IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1126

Filed 5 November 2025

Anson County, Nos. 18CR050493-030, 18CR050494-030, 18CR050783-030, 18CR050785-030, 21CR050160-030, 21CR050161-030, 21CR050162-030

STATE OF NORTH CAROLINA

v.

RICHARD DAVID JOHNSON

Appeal by Defendant from judgments entered 20 September 2023 and order entered 9 October 2023 by Judge Paul A. Holcombe, III, in Anson County Superior Court. Heard in the Court of Appeals 9 September 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Caden William Hayes, for the State-Appellee.*

*Caryn Strickland for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgments entered upon fourteen guilty verdicts of sex-related crimes against a minor. Defendant argues that the trial court abused its discretion during jury selection by denying Defendant's request for individual or small group *voir dire* and a juror questionnaire. Defendant also argues that the trial court erred by denying his post-trial motion for appropriate relief ("MAR").

Defendant has failed to show that the trial court abused its discretion in denying his *voir dire* requests. Defendant has failed to invoke this Court's

jurisdiction to review the denial of his MAR: Defendant failed to file a notice of appeal from the order denying his MAR and N.C. Gen. Stat. § 15A-1422(b) appears to preclude appellate review of that order by writ of certiorari. Even if appellate review by certiorari is not precluded, Defendant has failed to show merit or extraordinary circumstances to justify our issuing a writ of certiorari. Accordingly, we find no error in the trial court's judgments, dismiss Defendant's purported appeal from the trial court's order denying his MAR, and deny Defendant's petition for writ of certiorari.

## I.   Background

Defendant was tried on indictments alleging four counts of statutory sex offense with a child, four counts of indecent liberties with a child, four counts of disseminating obscenity to a minor under age thirteen, and two counts of third-degree sexual exploitation of a minor. Prior to trial, Defendant filed a written motion for individual or small group *voir dire*. He also orally moved for permission to give potential jurors a questionnaire at *voir dire*. The trial court denied the motions.

After deliberating for thirty minutes, the jury returned guilty verdicts on all charges.[1] The trial court sentenced Defendant to a consolidated active term of 300 to 420 months' imprisonment for certain convictions and a consecutive, consolidated term of 300 to 420 months' imprisonment for the remaining convictions. Defendant gave oral notice of appeal in open court.

---

[1] The facts underlying Defendant's convictions are not relevant to the procedural issues on appeal.

Following the trial, one of the jurors came forward. He stated that, during the trial, he realized he knew Defendant. He believed Defendant was not guilty and tried to explain why, but "no one listened." The jurors "were talking about having kids and how they didn't want that to happen to their kids." He said that they "would have gotten mad at [him]" if he had voted not guilty.

Defense counsel timely filed an MAR because the jurors had engaged in "bullying; suggestiveness; and undue pressure" and "rendered a decision based upon their status as 'parents' and not as impartial fact finders." The trial court denied the MAR. Defendant did not file a notice of appeal from the order denying the MAR. Additional facts underlying the procedural issues are included in the analysis below.

## II. Analysis

Defendant first argues that the trial court violated his right to an impartial jury and abused its discretion by denying his request for individual or small group *voir dire* and a juror questionnaire.

"The primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict." *State v. Rodriguez*, 371 N.C. 295, 311-12 (2018) (citations omitted)). "[C]ounsel may question prospective jurors concerning their fitness or competency to serve as jurors to determine whether there is a basis to challenge for cause or whether to exercise a peremptory challenge." *State v. Fullwood*, 343 N.C. 725, 732 (1996) (citing N.C. Gen. Stat. § 15A-1214(c) (1988)). "As part of the jury selection process, the trial court must

allow counsel an opportunity 'to inquire into the ability of the prospective jurors to follow the law,' with 'questions designed to measure prospective jurors' ability to follow the law being within the proper context of *voir dire*.'" *Rodriguez*, 371 N.C. at 312 (brackets and citations omitted).

Nonetheless, "[t]he trial judge has broad discretion to regulate jury *voir dire*." *Fullwood*, 343 N.C. at 732 (citation omitted). To that end, "the extent and manner of the inquiry [allowed to counsel] rests within the trial court's discretion." *State v. Locklear*, 349 N.C. 118, 142 (1998) (citation omitted). "In order for a defendant to show reversible error in the trial court's regulation of jury selection, a defendant must show that the court abused its discretion and that he was prejudiced thereby." *Rodriguez*, 371 N.C. at 312 (quotation marks and citations omitted).

## A. *Voir Dire*

### 1. *Individual or small group* voir dire

Defendant argues that the trial court abused its discretion by denying his motion for individual or small group *voir dire*. Defendant specifically argues that because this was a child sex abuse and child pornography case, individual or small group *voir dire* "on sensitive topics relating to child pornography and sexual acts involving minors" was necessary "so as not to taint the entire potential [juror] population."

"A trial judge may, in his discretion and for good cause shown, order that jurors be selected one at a time." *State v. Lee*, 335 N.C. 244, 267 (1994) (citations omitted).

"An abuse of discretion is shown only where the court's ruling 'was manifestly unsupported by reason and could not have been the result of a reasoned decision.'" *Id.* (citations omitted).

Prior to trial, Defendant submitted a written "Motion for Individual Voir Dire on Sensitive Topics Relating to Child Pornography and Sexual Acts Involving Minors," requesting the trial court to allow counsel "to voir dire the prospective jurors individually, separate and apart from the other . . . to prevent the jury panel from hearing questions being asked individual jurors with regard to the sensitive areas." The motion alleged, "Unless individual voir dire is allowed on certain subjects, the answers of some jurors might be tainted by being exposed to their fellow jurors' answers and by seeing which answers result in persons being dismissed from jury service."

At the hearing on the motion, Defendant argued as follows:

> Your Honor, what our fear would be is that if all of the potential jurors were allowed to sit in the courtroom before being in before being brought into the box, they are going to be exposed to a lot of the case themes and theories and elements of the case during voir dire, during the jury selection process.
>
> So what we will be asking Your Honor is to do questionnaires in the morning for tomorrow, so that we could just kind of get a basic understanding of what we're dealing with in this pool. So we can even make the determination do we even need to call more people in. Your Honor, this case did get some publicity. We're dealing with people who are lifetime residents of this area so that's also going to pose a challenge, let alone the sensitive nature of the topic.

> So what we would be proposing, Your Honor, is that maybe it's a 20-, 30-, 40-question juror questionnaire that we're able to give out in the morning where we can tailor some questions between myself and the State to kind of start weeding this down a bit so that when we do bring jurors in, we can kind of get a better handle on what's going on. We are also specifically asking, Your Honor, and I don't know if the Court is willing to entertain this, but maybe even individual or small group voir dire would be appropriate in this instance, so as not to taint the entire potential population. I do understand just logistically alone, I don't know exactly how this courthouse is laid out and it doesn't appear to be a lot of places where a big mass of people could be held, which also creates an issue that if we allow people to go wait in their cars or wait outside, somebody is likely to not come back and so that, again, could create more hurdles here.

When asked by the trial court, "Have you prepared this proposed jury questionnaire?" Defendant responded, "I have started, Your Honor. I have not presented it to the State yet, but I have started preparing some questions." The trial court then ruled on the written motion for individual *voir dire* as follows:

> [T]he written motion does not mention anything about a jury questionnaire. . . . And, obviously, we don't have that as of yet. I'm denying your request for individual voir dire. In my discretion, I don't believe that that is necessary in this particular case. You're entirely correct these are sensitive topics, but you'll be able to inquire about that. As far as doing a questionnaire, I will reserve judgment for that until I see the proposed questions. I'm not necessarily opposed to doing that . . . .

In denying Defendant's motion, the trial court indicated that it had considered the circumstances in this particular case, including the sensitive topics at issue and the possibility of juror questionnaires, and concluded that defense counsel would have

the opportunity to inquire about those topics. As the trial court's decision to deny Defendant's motion for individual *voir dire* was a reasoned decision, Defendant has failed to show that "the court's ruling was manifestly unsupported by reason . . . ." *Lee*, 335 N.C. at 267 (quotation marks and citations omitted). Accordingly, Defendant has failed to show the trial court abused its discretion in denying the motion.

To the extent Defendant's suggestion that "maybe even individual or small group *voir dire* would be appropriate in this instance" can be considered a motion for small group *voir dire*, Defendant failed to obtain a ruling on the motion and thus failed to preserve this issue for our review. *See* N.C. R. App. P. 10(a) ("In order to preserve an issue for appellate review, a party must . . . obtain a ruling upon the party's request, objection, or motion.").

### 2. *Juror questionnaire*

Defendant also argues that the trial court abused its discretion by not allowing a juror questionnaire. Defendant specifically argues that, because this was a child sex abuse and child pornography case, a juror questionnaire would be "the best way to get the truth out of the jurors in terms of their prior experiences."

Defendant's proposed juror questionnaire contained forty-one questions, including the following:

> Do you watch pornography:
> If so, how often:
> Have you ever been recorded having sexual intercourse:
> Have you ever recorded someone having sexual

intercourse:

Have you ever been paid to perform sexual acts or favors:

. . . .

Have you ever engaged in sexual acts with an adult while you were under age:

If so, did you ever report this sexual contact:

Have you engaged in therapy to address sexually explicit desires or fantasies:

. . . .

Have you ever engaged in sexual acts against you[r] will:

If so, did you report the acts and/or contact:

. . . .

Have you ever watched child pornography:

Have you ever watched pornography and had a question as to the age of the parties participating:

Have you ever been shown or received pornography in which you believe there were children performing sexual acts:

If so, what did you do next:

. . . .

Have you ever been accused of performing a sexual act on a child:

If so, when:

Defendant argued that "because we're dealing with such sensitive topics, we want jurors to be able to be candid about their prior experiences, and I think that it will be a little bit easier for them to do that if they were able to just write their answers and submit that . . . ." The State responded that "some of those questions are asking the jurors to write on paper if they've committed a crime" and that having

the jurors answer these questions in writing "doesn't necessarily mean they're going to be honest on that paper any more than they're going to be honest being asked the question right here in Court."

The trial court announced, "In my discretion, the Court having reviewed that is going to deny the request to utilize a juror questionnaire." The trial court "agree[d] with the State that several of these questions are just not appropriate in terms of what [it] would allow in terms of the voir dire." The trial court also compared the proposed questionnaire with "one that we have used in murder cases" and determined that "it was clear that these are not questions of a general type nature to allow one to receive quickly the -- the sorts of general information that one typically wants to -- to receive."

In support of his argument that the trial court abused its discretion in this case, Defendant cites to several federal district court orders granting the defendant's request for a questionnaire and individual voir dire and an opinion of this Court which indicated that questionnaires were used. *See State v. Ridgeway*, 185 N.C. App. 423, 429 (2007) ("In this case, the jury selection process effectively screened out any jurors who might have been influenced by pretrial publicity. Juror questionnaires were utilized and each potential juror was questioned about media exposure and potential prejudice."). But a federal or state trial court's discretionary decision to allow a questionnaire and/or individual voir dire in another case does not indicate

that the trial court's discretionary decision not to do so in this case was manifestly unsupported by reason. *Lee*, 335 N.C. at 267.

It is apparent from the transcript that the trial court made a reasoned decision to Defendant's request for a juror questionnaire. Defendant has thus failed to show that "the court's ruling was manifestly unsupported by reason . . . ." *Id.* (quotation marks and citations omitted). Accordingly, Defendant has failed to show the trial court abused its discretion in denying the request. *See id.*

**B. Motion for Appropriate Relief**

Defendant next argues that the trial court erred by denying his MAR. We first address our jurisdiction to address the merits of this issue. Defendant brought his MAR pursuant to N.C. Gen. Stat. § 15A-1414. An appeal from the denial of an MAR under this statute is governed by N.C. Gen. Stat. § 15A-1422(b), which provides, "The grant or denial of relief sought pursuant to [N.C. Gen. Stat. §] 15A-1414 is subject to appellate review *only in an appeal regularly taken*." N.C. Gen. Stat. § 15A-1422(b) (2023) (emphasis added). To perfect an appeal pursuant to N.C. Gen. Stat. § 15A-1422(b), a defendant must file notice of appeal from the order denying his MAR "within the time [and] in the manner . . . provided in the rules of appellate procedure." N.C. Gen. Stat. § 15A-1448(b) (2023). Rule 4(a)(2) of the Rules of Appellate Procedure requires notice of appeal to be filed within fourteen days after entry of the order denying a defendant's MAR. *See* N.C. R. App. P. 4(a)(2).

In this case, Defendant concedes that he failed to file a notice of appeal from the order denying his MAR. Defendant argues that he was not required to file a notice of appeal from this order because he had already "properly given oral notice of appeal in open court after final judgment was entered," in compliance with N.C. R. App. P. 4(a)(1), which allows an appeal in a criminal case to be taken by "giving oral notice of appeal at trial." N.C. R. App. P. 4(a)(1). Defendant's argument is not correct. *See State v. Slaughter*, 285 N.C. App. 529, 533 (2022) (explaining that a defendant seeking to appeal the denial of an N.C. Gen. Stat. § 15A-1414 MAR must file a separate notice of appeal from that denial order); *State v. Hagans*, 188 N.C. App. 799, 805-06 (2008) (same). Defendant's various arguments as to why *Slaughter* and *Hagans* are not binding on this Court are unavailing. *See In re Civil Penalty*, 324 N.C. 373, 384 (1989) ("Where a panel of the Court of Appeals has decided the same issue . . . a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Accordingly, this Court is without jurisdiction to review Defendant's challenge to the denial of his MAR, and that portion of Defendant's appeal is dismissed.

Defendant has filed a petition for writ of certiorari asking this Court to address the merits of his challenge to the denial of his MAR, should we determine that his failure to timely file a notice of appeal divested us of jurisdiction. However, "[t]he grant or denial of relief sought pursuant to [N.C. Gen. Stat. §] 15A-1414 is subject to appellate review *only* in an appeal regularly taken." N.C. Gen. Stat. § 15A-1422(b)

(emphasis added). This language appears to preclude appellate review by writ of certiorari. *See State v. Thomsen*, 369 N.C. 22, 26 (2016) (noting that N.C. Gen. Stat. § 15A-1422(b) limits the Court of Appeals' jurisdiction to review MARs in other ways). Even if, however, appellate review by certiorari is not precluded, Defendant has failed to show merit or extraordinary circumstances to justify our issuing a writ of certiorari.

This Court may issue a writ of certiorari "in aid of its own jurisdiction," N.C. Gen. Stat. § 7A-32(c) (2023), to permit review of a judgment of the trial tribunal "when the right to prosecute an appeal has been lost by failure to take timely action," N.C. R. App. P. 21(a)(1). "[A] writ of certiorari should issue only if the petitioner can show merit or that error was probably committed below" and "only if there are extraordinary circumstances to justify it." *Cryan v. Nat'l Council of YMCA of the United States*, 384 N.C. 569, 572 (2023) (cleaned up). "Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court." *Id.* at 573 (citation omitted).

Here, Defendant's MAR was based on a statement from a juror who came forward post-trial, explaining that he was pressured to vote guilty because the other jurors "rendered a decision based upon their status as 'parents'" and engaged in "tactics of bullying; suggestiveness; and undue pressure." The trial court denied the motion, citing N.C. Gen. Stat. § 8C-1, Rule 606(b) (forbidding jurors from impeaching their own verdict by providing evidence of what happened in the jury room during

deliberations), N.C. Gen. Stat. § 15A-1240 (same), and *State v. Corbett*, 269 N.C. App. 509, 519 (2020) (applying the "no impeachment rule").

Defendant essentially concedes that Rule 606(b) and N.C. Gen. Stat. § 15A-1240(a) preclude his argument. Defendant argues, however, that "[g]iven the trial court's improper restrictions on *voir dire*, . . . the normal safeguards used to justify the 'no impeachment' rule do not apply here." As the trial court did not abuse its discretion by denying Defendant's *voir dire* requests, Defendant's argument based on the trial court's "improper restrictions on *voir dire*" is meritless. Accordingly, Defendant has failed show merit or extraordinary circumstances to justify our issuing a writ of certiorari. *See Cryan*, 384 N.C. at 572. Accordingly, in our discretion, we deny Defendant's petition. *See id.* at 573.

## III. Conclusion

For the reasons above, we find no error in in the trial court's judgment, dismiss Defendant's purported appeal from the trial court's order denying his MAR, and deny Defendant's petition for writ of certiorari.

NO ERROR IN PART; DISMISSED IN PART; AND DENIED IN PART.

Judges TYSON and FLOOD concur.